1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8    UNITED STATES OF AMERICA,            )
9                                          )
            Plaintiff/Appellee,            )    No.  CR 08-271-TUC-CKJ
10                                         )
     vs.                                   )        No. 08-11418 MP
11                                         )
     ABIMAEL ROBLERO-SOLIS,                )
12                                         )
            Defendant/Appellant.           )
13   _____)
                                           )
14   UNITED STATES OF AMERICA,             )
                                           )    No. CR 08-272-TUC-CKJ
15          Plaintiff/Appellee,            )
                                           )       No. 08-11434 MP
16   vs.                                   )
                                           )
17   JANET ROBLERO-PEREZ                   )        **ORDER**
                                           )
18          Defendant/Appellant.           )
     _____)
19

20          Pending before the Court are Appellants' appeals from their judgments of

21   convictions and sentences for violations of Title 8, U.S.C. § 1325, unlawfully entering

22   the United States of America from Mexico at a time or place other than that designated

23   by an Immigration Officer of the United States of America.  Because these appeals

     involve the same proceedings and the same issues, the Court will address the appeals
24
     together.
25

26
     *Factual and Procedural Background*
27
            Abimael Roblero-Solis and Janet Roblero Perez ("Appellants") appeared in court
28

before a magistrate judge on March 5, 2008, at 1:30 p.m. under the Arizona Denial Prosecution Initiative ("ADPI").[1]  A court interpreter was present to translate for Appellants. Forty-seven defendants answered present for roll call at the beginning of the proceedings.  The court inquired of the attorneys whether there was any objection to conducting the proceedings as a group, and Appellants' attorney responded with objection.  The court ordered that Appellants be removed from the courtroom; however, Appellants remained.  Appellants' counsel clarified that he was requesting that the court ask each individual defendant "whether he or she understood each of his or her rights, that a factual basis was inquired into as to each individual defendant, and that each be addressed by the court individually at time of sentencing."  Appellant's Opening Mem. at 4.  The magistrate judge addressed the forty-seven defendants collectively.   She collectively instructed all of the defendants that each person must answer any questions asked of the group individually and that she needed to see and hear their response.  The magistrate judge advised the defendants as a group of their rights and the possible consequences of pleading guilty.

On several occasions throughout the proceedings, the magistrate judge asked the defendants as a group whether they understood her statements, to which the defendants responded with "general yes answers."  However, the court took the defendants' pleas of guilty individually, including Appellants.  The court addressed the group collectively once again in order to establish the factual basis for the guilty pleas, and then proceeded to sentence the defendants in groups of eighteen defendants at a time.  The court imposed a sentence of time served upon Appellants.

After Appellants had been sentenced, the magistrate judge addressed Appellants' counsel to clarify counsel's concerns regarding the plea colloquy.  The magistrate judge then made further inquiries of the Appellants in order to further establish the factual basis

---

[1] The government asserts in its Answering Memorandum that Appellants met with their attorney in the morning between 9:00 a.m. and 12:00 p.m.  The Court cannot find support for this assertion in the record.

for Appellants' guilty pleas and to determine that they waived their right to a trial. Following these inquiries, the magistrate judge addressed Appellants' counsel and asked whether there were any further issues to address, to which counsel responded in the negative.

*Standard of Review*

This Court reviews *de novo* whether an appellant's guilty plea met the constitutional requirements of due process and the requirements of Fed.R.Crim.P. 11. *See Marshall v. Lonberger*, 459 U.S. 422, 431 (1983) ("[T]he governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law . . . and not a question of fact . . ."); *United States v. Pena*, 314 F.3d 1152, 1155 (9th Cir. 2003) ("The adequacy of a Rule 11 plea colloquy is subject to *de novo* review.")  If an error affecting an appellant's constitutional rights was preserved in the record through objection, the appellee has the burden to prove that any such error was harmless beyond a reasonable doubt.  *United States v. Dominguez Benitez*, 542 U.S. 74, 82 n.7 (2004).  However, if the error was *not* preserved in the record by timely objection, the Rule 11 error is subject to plain error review.  *Id.* at 76.  Appellants argue that the same standard of proof should apply when a Rule 11 error is preserved.  Appellant's Opening Mem. at 8.  The purpose of Rule 11 is "to produce a complete record at the time the plea is entered of the factors relevant to [the] determination of voluntariness [required by the Constitution] in order to suppress frivolous attacks on the constitutional validity of the guilty plea." *Guthrie v. United States*, 517 F.2d 416, 418 (1975).

"Rule 11 . . . instructs that not every violation of its terms calls for reversal of conviction by entitling the defendant to withdraw his guilty plea. 'A variance from the requirements of this rule is harmless error if it does not affect substantial rights.'" *Dominguez Benitez*, 542 U.S. at 80  (quoting Fed. R. Crim. P. 11(h)).  Whether or not an error is plain only goes to the issue of reviewability and not to the issue of whether reversal is warranted; therefore, an error that was not preserved may be so plain as to be

- 3 -

1   reviewable yet still be harmless and thus not justify reversal.  *United States v. Lopez*, 575

2   F.2d 681, 685 (9th Cir. 1978).  In order for a court to be able to exercise its discretion and

3   reverse under the plain error standard, the plain error must affect substantial rights and

4   also seriously affect the "fairness, integrity, or public reputation of judicial proceedings."

5   *United States v. Bear*, 439 F.3d 565, 568 (9th Cir. 2006).  "An error is plain if it is 'clear'

6   or 'obvious' under current law."  *Id.* at 569.  When an error affects the outcome of the

7   proceedings, it prejudices the substantial rights of a defendant.  *Id.*  However, "a

8   defendant who seeks reversal of his conviction after a guilty plea, on the ground that the

9   district court committed plain error under Rule 11, must show a reasonable probability

10  that, but for the error, he would not have entered the plea."  *Dominguez Benitez*, 542 U.S.

11  at 83.

12      Appellants assert that the Rule 11 error was preserved because defense counsel

13  timely objected when the magistrate judge inquired as to whether any defense counsel

14  objected to conducting the proceedings as a group.  Appellant's Opening Mem. at 7.

15  Appellants argue that  because the error was preserved, the government has the burden

16  to prove that the error was harmless beyond a reasonable doubt.  *Id.*

17      The government argues that the Appellant did not preserve the alleged error and,

18  therefore, plain error review is appropriate.  Government Answering Mem. at 8.

19  Specifically, the government alleges that Appellants "failed to preserve the noticed error

20  when counsel responded to inquiry from the magistrate by stating, 'I don't think there is

21  anything further.'" (*Id.*)  Appellants argue, however, that when the magistrate made this

22  inquiry, the court had already taken Appellants' plea of guilty and sentenced Appellants

23  and that the inquiry was "legally irrelevant at that point."  Appellant's Opening Mem. at

24  6.  The Court notes that the magistrate made no new findings after that last inquiry.

25  Additionally, "[a]fter the court imposes sentence, the defendant may not withdraw a plea

26  of guilty...and the plea may be set aside only on direct appeal or collateral attack."

27  Fed.R.Crim.P. 11(e).

28      The government also argues that even if Appellant did initially preserve the error,

Appellants waived their right to appeal any Rule 11 error by "intentionally continuing to participate in the proceeding."  Government Answering Mem. at 8.  However, Appellants correctly point out that the government's argument establishes a novel and unprecedented hurdle on appeal.  Appellant's Reply Mem. at 2.  A party that makes an objection below is not required or expected to withdraw from participation in the court proceeding itself in order to preserve the objection on appeal.  To hold otherwise would be at odds with the well-established "final judgment rule" outlined in 28 U.S.C. § 1291.  If Appellants had refused to participate in the proceedings, the court could not have rendered a final judgment, and no federal appellate court would have jurisdiction to hear the appeal under §1291.  The Court finds that Appellants initially preserved the error.

However, the magistrate judge subsequently sought to address the objections raised by Appellants.  She made further inquiries into the rights being waived by Appellants and further inquires regarding the factual basis of the charges against Appellants.  Following these inquiries, the magistrate judge addressed Appellants' counsel and asked whether there were any further issues to address, to which counsel responded in the negative.  At this point, no further objections were raised.  The Ninth Circuit has stated:

> The change of plea proceeding was not the last chance to inquire, nor was this the last information the district court had.  Rule 11(f) says that the court "should not enter a judgment" on a guilty plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."  That means that the district court's duty to inquire into a factual basis does not end when the plea is taken.  It continues until judgment is entered.

*United States v. Timbana*, 222 F.3d 688, 712 (9th Cir. 2000).  Further, "the law continues to be that the legally effective sentence is the oral sentence and the judgment and commitment order is mere evidence of the sentence."  *United States v. Villano*, 816 F.2d 1448, 1452 (10th Cir. 1987), collecting cases.  In other words, courts have recognized the distinction between a judgment and the entry of judgment.  *See Wilson v. Bell*, 137 F.2d 716 (6th Cir. 1943) (The judgment in a criminal case is the pronouncement by the judge from the bench and not the entry of the judgment by the clerk.); Fed.R.Crim.P. 32(k)(1) ("In the judgment of conviction, the court must set forth the plea, the jury verdict or the

court's findings, the adjudication, and the sentence. . . . The judge must sign the judgment, and the clerk must enter it.").

In the appellate process, "[a] judgment or order is entered for purposes of this Rule 4(b) when it is entered on the criminal docket." Fed.R.App.P. 4(b)(6). The Court is not aware of any other authority for a different determination of when judgment is entered. In this case, the magistrate judge pronounced judgment on March 5, 2008, but the Clerk of the Court did not enter that judgment on the docket sheet until after the entire proceeding was concluded. Indeed, the judgment was not entered until March 6, 2008.

The magistrate judge, therefore, was entitled to ensure compliance with Fed.R.Crim.P. 11 and due process throughout the entire proceeding. Appellants' argument that any objections were legally irrelevant after the pronouncement of judgment is simply not supported by any authority. Rather, it was entirely appropriate and reasonable for the magistrate judge to inquire if any corrections or further inquiry was needed. As a practical matter, the Court notes that such an inquiry is routine to ensure that the Court has not omitted anything and to provide counsel an opportunity to raise any issues that might need to be addressed. The Court finds that, by failing to renew any objection after the magistrate judge made further inquiries of Appellants, Appellants have not preserved any alleged error in the ADPI proceedings. Therefore, the unpreserved Rule 11 error is subject to plain error review. *Dominguez Benitez*, 542 U.S. at 76.

*Fed.R.Crim.P. 11 Violation*

Fed.R.Crim.P. 11(b) lays out the requirements a court must satisfy before it can accept a plea of guilty. The court must address the defendant personally in open court and inform defendant of, and determine that the defendant understands, among other things, the right to plead not guilty and the right to a jury trial. Fed.R.Crim.P. 11(b)(1). "Before accepting a plea of guilty...the court must address the defendant personally in open court and determine that the plea is voluntary..." Fed.R.Crim.P. 11(b)(2). "Before entering judgment on a guilty plea, the court must determine that there is a factual basis

for the plea." Fed.R.Crim.P. 11(b)(3).  For a guilty plea to be valid, a defendant must enter the plea knowingly and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242 (1968). The Court cannot presume that a waiver of constitutional rights was knowing and voluntary from a silent record.  *Id.* at 243.  However, specific articulation of the defendant's rights is not required as long as the record affirmatively shows that the defendant entered its guilty plea voluntarily and intelligently. *Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974).

A plea of guilty involves the waiver of a number of constitutional rights. *Boykin*, 395 U.S. at 243.  "For this waiver to be valid...it must be an intentional relinquishment or abandonment of a known right or privilege." *Id.*, *internal quotations omitted*.  Also, "[i]f there is a guilty plea...the record must include the inquiries and advice to the defendant required under Rule 11(b) . . ." Fed.R.Crim.P. 11(g).  Appellants argue that the record does not indicate whether they entered their guilty pleas voluntarily and intelligently.  Appellant's Opening Mem. at 11  ("Before being sentenced...appellant responded with 'present' and 'guilty,' but other than these two instances, no record was created for review to determine that appellant was answering individually the questions of the court in the affirmative, much less understanding the statements or questions of the court.").  Appellants concede that the court instructed anyone in the courtroom who did not understand a question or what was taking place to stand and seek clarification from the court. *Id.* at 11-12.  However, Appellants argue that "[g]roup responses and presumed acquiescence does not create a record which would demonstrate appellant's knowing and voluntary waiver of his rights." *Id.* at 12.  Other than the plain language of Rule 11, which uses the word "personally" to describe how a court must address the defendant when accepting a plea of guilty, Appellants cite no authority to support its interpretation of Rule 11's requirements.  "[T]he plain language interpretation of a statute enjoys a robust presumption in its favor, [but] Congress cannot, in every instance, be counted on to have said what it meant or to have meant what it said." *FBI v. Abramson*, 456 U.S. 615, 638 (1982) (Blackmun, J., dissenting), *citing United States v. Wiltberger*, 18 U.S.

76, 95 (1820).  The Supreme Court explained in *McCarthy v. United States* that "[p]rior to the 1966 amendment . . . not all district judges personally interrogated defendants before accepting their guilty pleas.  With an awareness of the confusion over the Rule's requirements in this respect, [it was amended] to add a provision expressly requiring the court to address the defendant personally."  394 U.S. 459, 466 (1969).  The Court further explained that "[t]his clarification of the judge's responsibilities . . . furthers both of the Rule's purposes.  By personally interrogating the defendant, not only will the judge be better able to ascertain the plea's voluntariness, but he will also develop a more complete record to support his determination in a subsequent post-conviction attack."  *Id.*

Appellants correctly assert that "[n]owhere does the record indicate whether appellant joined in any of the general affirmative answers noted by the interpreter."  Appellant's Opening Memo. at 12.  However, Appellants were represented by counsel, and it is not unreasonable to expect counsel to interject for his clients in the event that his clients are not answering the court's inquiries or following the  court's instructions.

The fact that the proceedings are *en masse* is not enough to support a finding that the proceedings violate due process; however, the Ninth Circuit has held that *en masse* proceedings can violate due process if they are not carried out in a way that demonstrates the defendant's individualized understanding and waiver.  *See United States v. Lopez-Vasquez*, 1 F.3d 751 (9th Cir. 1993) (concluding that mass silent waiver impermissibly presumes acquiescence and fails to overcome the presumption against waiver).  However, the defendant in *Lopez-Vazquez* was not represented by counsel.

It is worth noting that the record contains entries of "[g]eneral 'yes' response" that refer to all the defendants at the proceeding, *see e.g.* Appellant's Excerpts of R. at 11, while there are other entries of "[g]eneral 'yes' response" that only refer to select defendants, *see e.g. id.* at 17, and it is not possible to discern who exactly is giving the general "yes" responses in those instances.  These same general responses are prevalent when the magistrate judge was establishing the factual basis of the guilty pleas as Rule 11 requires.  *See e.g. id.* at 26.  There is no way to discern from the record who exactly

1   is answering.  However, the magistrate judge had specifically instructed anyone in the

2   courtroom who did not understand a question or what was taking place to stand and seek

3   clarification from the court.

4        The Seventh Circuit has stated that addressing multiple defendants together is

5   sufficient to meet the Rule 11 requirement that defendants are addressed personally,

6   although the court specifically stated "it is not the preferred method."  *United States v.*

7   *Fels*, 599 F.2d 142, 146 (7th Cir. 1979).  However, in *Fels* the district court spoke

8   simultaneously to only three defendants not forty-seven.  *Id.* at 144.  The Seventh Circuit

9   emphasized that the "personally addressed" requirement of Rule 11 was satisfied when

10  "the district court specifically calls the attention of all of the defendants and speaks

11  directly to them and not through their attorney or the prosecutor" regardless of the

12  number of defendants.  *Id*. at 146.

13       The Eighth Circuit also found that the court could personally address a defendant

14  by asking one question of multiple defendants.  *United States v. Hobson*, 686 F.2d 628,

15  630 (8th Cir. 1981).  However, in *Hobson* the court did require each defendant to respond

16  individually.  *Id*.  The opinion does not indicate how many defendants were present nor

17  does it indicate whether the court required individual answers on the transcript or just

18  requested that all defendants individually answer to create a group answer.

19       The American Heritage Dictionary defines personally as "without intervention of

20  another."  The American Heritage Dictionary, Fourth Edition.

21       *Fels, Hobson*, and the dictionary definition suggests that the magistrate judge did

22  personally address all forty-seven defendants at once when the magistrate went through

23  the elements of the crime, the waivers, and the potential consequences.  The magistrate

24  judge asked questions of the defendants and received answers directly from the

25  defendants.  The Court finds that the magistrate judge personally addressed Appellants

26  in open court and determined that their guilty pleas were voluntary in compliance with

27  Fed.R.Crim.P. 11(b)(2).

28       The Fifth Circuit has stated that Rule 11 is meant to ensure the court addresses

three core concerns "(1) whether the guilty plea was coerced; (2) whether the defendant understands the nature of the charges; and (3) whether the defendant understands the consequences of his plea." *United States v. Johnson*, 1 F.3d 296, 300 (5th Cir. 1993). Additionally, Rule 11 protects the "integrity of the courts" by requiring the Court to provide adequate protection for the defendant and ensures "judicial impartiality after plea negotiations are completed" allowing the Court to determine fairness of a plea. *United States v. Racich,* 35 F. Supp.2d 1206, 1211 (S.D. Cal. 1999).

A court may find a factual basis to satisfy Rule 11 in anything that appears on the record. *United States v. Fountain*, 777 F.2d 351, 356 (7th Cir. 1985). The Appellants answered they were not a citizen or national of the United States, they did not possess valid immigration documents, they had not received permission from an official to enter or remain in the United States, and that they did not claim to have a legal right to be in the United States. This is a sufficient factual basis to comply with Rule 11. The Court finds that plain error has not been established in the plea proceeding.

*Due Process*

A plea of guilty forgoes a fair trial and other constitutional guarantees. *United States v. Ruiz*, 536 U.S. 622, 628, 122 S. Ct. 2450 (2002). Due to the significance of waived rights, due process requires the defendant must enter the agreement voluntarily, knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences. *Id*. at 629. Voluntariness is a question of law and must be demonstrated considering the totality of the circumstances surrounding the plea. *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463 (1970). "Courts should 'indulge every reasonable presumption against waiver,' and they should 'not presume acquiescence in the loss of fundamental rights.'" *Barker v. Wingo*, 407 U.S. 514, 525, 92 S. Ct. 2182, 2189, 33 L. Ed. 2d 101 (1972).

"The process due in any given instance is determined by weighing "the private interest that will be affected by the official action" against the Government's asserted

1   interest, "including the function involved" and the burdens the Government would face
2   in providing greater process." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (quoting
3   *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). In *Boykin v. Alabama,* the Supreme
4   Court determined that due process requires the Court create a record adequate for review
5   that the waived rights were waived intelligently and understandably. 395 U.S. 238, 243-
6   44, 89 S. Ct. 1709 (1969).

7       The Court may look to deportation hearings to determine whether the Appellants'
8   hearing complied with due process. An alleged alien at a deportation hearing is not
9   entitled to all the constitutional rights as the appellant (an alien at a deportation hearing
10  is not entitled to court appointed counsel, the exclusionary rule, and certain protections
11  from the fifth amendment). However, an alien at a deportation hearing is entitled to due
12  process. *United States v. Nicholas-Armenta*, 763 F.2d 1089, 1090 (9th Cir. 1985).

13      In *Lopez-Vazquez*, the Ninth Circuit ruled a mass silent waiver of the right to
14  appeal violated due process. However, the Ninth Circuit has also found due process was
15  not violated when only a single translated reply for a group of eight alleged aliens
16  waiving their right to counsel, admitting deportation, and waiving their right to appeal.
17  *United States v. Barraza-Leon*, 575 F.2d 218, 221 (9th Cir. 1978). "While it would be
18  more helpful to have a record of the precise, individual statements of each respondent in
19  multiple deportation hearings, due process does not require it." *Id*.

20      The Ninth Circuit has also upheld a mass deportation hearing involving twenty-
21  five and twenty-nine respondents. *United States v. Calles-Pineda*, 627 F.2d 976, 977 (9th
22  Cir. 1980). The Ninth Circuit indicated the procedures used in *Calles-Pineda* were
23  "substantially identical" to the procedures used in *Barraza-Leon*. *Id*. The Ninth Circuit
24  also stated "mass deportation hearings must have an outer limit [to comply with due
25  process]. That limit has been reached in these cases. We would not expect a panel of this
26  court to approve mass hearings any larger than those conducted in these cases. We are
27  unwilling, however, to draw the line to exclude these cases without prior warning." *Id*.
28      In the cases before this Court, the magistrate judge explored whether the pleas

were entered voluntarily, knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences several times.  The magistrate judge instructed all of the defendants collectively that each person must answer any questions asked of the group individually and that she needed to see and hear their response.  The magistrate judge advised the defendants as a group of their rights and the possible consequences of pleading guilty.  On several occasions throughout the proceedings, the magistrate judge asked the defendants as a group whether they understood her statements, to which the defendants responded with "general yes answers."  However, the court took the defendants' pleas of guilty individually, including Appellants.  The court addressed the group collectively once again in order to establish the factual basis for the guilty pleas, and then proceeded to sentencing the defendants in groups of eighteen defendants at a time.  The court imposed a sentence of time served upon Appellants.  After Appellants had been sentenced, the magistrate judge addressed Appellants' counsel to clarify counsel's concerns regarding the plea colloquy.  The magistrate judge then made further inquiries of the Appellants in order to further establish the factual basis for Appellants' guilty pleas and to determine that they waived their right to a trial.

Furthermore, the court asked the twelve lawyers present if they believed their clients were competent and pleading guilty voluntarily; the court received "[g]eneral 'yes' answers."

This hearing had forty-seven defendants which is beyond the outer-limits of a mass hearing set in *Calles-Pineda*.  However, in this case the forty-seven defendants were represented by twelve attorneys.  While one of forty-seven defendants may not answer a question by the court and go unnoticed or potentially even answer a waiver question in the negative and go unnoticed, the defense attorney should ensure their defendants' voices are heard.  Additionally, it is highly unlikely that an attorney's silence or negative answer would go unnoticed when the court questioned the attorneys as a group.  In the Appellants' cases, their attorney's objection was noticed by the court initially and the magistrate judge received direct individual answers from the attorney that the Appellant

was aware of the rights he was waiving and that a factual basis existed for the plea. The attorney then affirmatively stated that the Appellant was competent and pleading guilty voluntarily.

The Appellants argue a more protective process is due in this case than at a deportation hearing. The assistance of counsel provided a more protective process. Unlike in a civil deportation hearing, the Appellants in this case potentially faced time in prison; the assistance of counsel is sufficient to offset this raised private interest. The Appellants do not argue in what other ways the Appellants' private interest was increased as opposed to the deportation hearing in *Barraza-Leon*. In both cases the private interest is very high: the defendant is facing deportation, a record is created that the defendant remained in the country illegally, the defendant has made a record that they do not have a defense to being in the country (i.e. born in the United States), and the results of the deportation hearing may be used in future criminal proceedings. *See Barraza-Leon*, 575 F.2d 218.

The presence of attorneys at the challenged hearing, as opposed to the civil deportation hearing in *Calles-Pineda*, allows for the magistrate judge to determine that a plea has been entered knowingly, intelligently, and voluntarily, even if more individuals' cases are resolved than the outer-limit suggested in *Calles-Pineda*. The addition of the attorneys at the Appellants' hearing provides sufficient protection to offset the increased private interest at stake in the Appellants' criminal hearing compared to the civil deportation hearing in *Calles-Pineda*. Therefore, under the *Matthews* balancing test this Court finds the addition of legal counsel for the Appellants sufficiently offsets the increased private interest at stake and the hearing complies with due process.

Moreover, the record on review adequately shows that the pleas were knowingly, intelligently, and voluntarily entered. "The process due in any given instance is determined by weighing "the private interest that will be affected by the official action" against the Government's asserted interest, "including the function involved" and the burdens the Government would face in providing greater process." *Hamdi v. Rumsfeld*,

1   542 U.S. 507, 529 (2004) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).  In

2   *Boykin v. Alabama,* the Supreme Court determined that due process  requires the Court

3   create a record adequate for review that the waived rights were waived intelligently and

4   understandably.  395 U.S. 238, 243-44, 89 S. Ct. 1709 (1969).  The Ninth Circuit has

5   affirmatively stated that while due process requires a record adequate for review and it

6   would be "helpful to have a record of the precise, individual statements of each

7   respondent in multiple deportation hearings, due process does not require it." *Barraza-*

8   *Leon*, 575 F.2d at 221.

9          In this case, as in *Barraza-Leon*, the Court did not record individual statements

10  from the Defendants regarding whether the plea was entered knowingly, intelligently, and

11  voluntarily.  Instead the record only reflect general yes or no answers.

12         The Appellants argue more process is due in this case than at a deportation hearing.

13   However, the presence of Appellants' counsel provide sufficient protection in the

14  process to offset the increased private risk.  Therefore, under the *Matthews* balancing test,

15  the Court finds the addition of the legal counsel for Appellants sufficiently offsets the

16  increased private interest at stake and the hearing and the record created complies with

17  due process.

18

19  *Structural vs. Harmless Error Analysis*

20         Appellants argue that even if the government is able to prove beyond a reasonable

21  doubt that the variance under Rule 11 was harmless, this Court should still overturn the

22  convictions because the error was structural in nature.  Appellants' Opening Mem. at 8.

23  Even if the Court had found there was error in the plea proceedings, the Court finds that

24  such error would be harmless.  In discussing whether to apply harmless error analysis or

25  structural error analysis, the Fourth Circuit Court of Appeals stated:

26         Correctly applied, harmless error and structural error analyses produce
           identical results: unfair convictions are reversed while fair convictions are
27         affirmed. Expanding the list of structural errors, however, is not mere legal
           abstraction. It can be a dangerous endeavor.  There is always the risk that
28         a sometimes-harmless error will be classified as structural, thus resulting in

the reversal of criminal convictions obtained pursuant to a fair trial.  Given this risk, judges should be wary of prescribing new errors requiring automatic reversal.  Indeed, before a court adds a new error to the list of structural errors...the court must be certain that the error's presence would render every such trial unfair.

*Sherman v. Smith*, 89 F.3d 1134, 1138 (4th Cir. 1996).  On the list of errors the Supreme Court has considered to be structural, thus warranting automatic reversal, are the denial of the right to a jury verdict of guilt beyond a reasonable doubt, the denial of the right of self-representation at trial, the denial of the right to public trial, the total deprivation of the right to counsel, and the presence of a biased judge.  *Id.*  Structural error affects the "entire conduct of the trial from beginning to end," and therefore cannot be harmless.  *Arizona v. Fulminante*, 499 U.S. at 309.  In *Sherman*, a murder case, the Fourth Circuit held that the fact that a juror visited the crime scene was not a structural defect and could be analyzed as harmless error.  89 F.3d at 1137.  Where a defendant has counsel and is tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis.  *Castillo v. Stainer*, 997 F.2d 669, 669 (9th Cir. 1993).  Also, Rule 11 was amended to state that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights."  Fed.R.Crim.P. 11(h).

Rule 11 requires that a court address the defendant personally to determine the factual basis for the guilty plea and the voluntariness of the plea.  As the Court has previously stated, the magistrate judge did address the Appellants "personally."  Even if "personally" is to be read as "individually," as Appellants would suggest, the conclusion that ADPI as it is conducted always violates Rule 11 does not necessarily follow.  The magistrate judge stated that she did not understand Appellants' objection until after sentencing had been completed, but she indicated that had she known what Appellants' counsel meant when he objected, she could have addressed Appellants' concern.  Appellants's Excerpts of R. at 42.  The fact that the defect Appellants alleges to have existed during the ADPI proceedings can be corrected at the time of the proceedings and the defect does not affect the entire conduct of a trial from beginning to end, seems to

distinguish the error in this case from denial of the right to a jury verdict of guilt beyond a reasonable doubt, or any of the structural errors mentioned above. Moreover, Appellants have not argued that, had the magistrate judge initially addressed Appellants individually when establishing the factual basis and voluntariness of Appellants' guilty pleas, Appellants would not have pled guilty or the court would not have accepted the plea. Therefore, the error cannot be said to affect substantial rights. The Court finds that the ADPI proceedings do not constitute a structural defect.

Accordingly, IT IS ORDERED The judgments of convictions and sentences of Abimael Roblero-Solis and Janet Roblero-Perez are AFFIRMED.

DATED this 8th day of August, 2008.


_____
Cindy K. Jorgenson
United States District Judge